T.C. Memo. 1995-580


UNITED STATES TAX COURT


ANTHONY J. AND CLAIRE L. PACE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


ESTATE OF EDGAR P. BERRY, DECEASED, DOROTHY M. BERRY, EXECUTRIX
AND DOROTHY M. BERRY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 14454-85, 3918-90.    Filed December 6, 1995.


James J. Mahon, for petitioners.

Barry J. Laterman, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, Judge:  These consolidated cases were assigned to
Special Trial Judge Norman H. Wolfe pursuant to the provisions of

section 7443A(b)(4) and Rules 180, 181, and 183.[1]  The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

WOLFE, Special Trial Judge:  These cases are part of the Plastics Recycling group of cases.  For a detailed discussion of the transactions involved in the Plastics Recycling cases, see Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion 996 F.2d 1216 (6th Cir. 1993).  The facts of the underlying transaction in these cases are substantially identical to those in the Provizer case.

In a notice of deficiency dated April 13, 1985, respondent determined a deficiency in the 1981 joint Federal income tax of petitioners Pace in the amount of $52,211.  Respondent also determined that interest on deficiencies accruing after December 31, 1984, should be calculated at 120 percent of the statutory rate under section 6621(c).[2]  On January 10, 1994, respondent

---

[1]  All section references are to the Internal Revenue Code, in effect for the year in issue, unless otherwise indicated.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  The notice of deficiency refers to sec. 6621(d).  This section was redesignated as sec. 6621(c) by sec. 1511(c)(1)(A) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2744 and repealed by sec. 7721(b) of the Omnibus Budget Reconciliation Act of 1989 (OBRA 89), Pub. L. 101-239, 103 Stat. 2106, 2399, effective for tax returns due after Dec. 31, 1989, OBRA 89 sec. 7721(d), 103 Stat. 2400.  The repeal does not affect the instant case.  For simplicity, we will refer to this section as sec.

(continued...)

filed an amendment to answer and asserted additions to tax for 1981 in the amount of $2,611 under section 6653(a)(1) for negligence and under section 6653(a)(2) in an amount equal to 50 percent of the interest due on the underpayment attributable to negligence.  Respondent also claimed therein that petitioners had an underpayment of tax on their 1981 return attributable to a valuation overstatement and asserted an addition to tax under section 6659 in an amount equal to 30 percent of the underpayment attributable to valuation overstatement.

In a notice of deficiency dated December 14, 1989, respondent determined a deficiency in the 1981 joint Federal income tax of petitioners Berry in the amount of $29,978 and additions to tax for that year in the amount of $11,881 under section 6659 for valuation overstatement, in the amount of $2,489 under section 6653(a)(1) for negligence, and under section 6653(a)(2) in an amount equal to 50 percent of the interest due on the underpayment attributable to negligence.  On March 14, 1994, respondent filed an amendment to answer and asserted that interest on deficiencies accruing after December 31, 1984, should be calculated at 120 percent of the statutory rate under section 6621(c).

---

[2](...continued)
6621(c).  The annual rate of interest under sec. 6621(c) for interest accruing after Dec. 31, 1984, equals 120 percent of the interest payable under sec. 6601 with respect to any substantial underpayment attributable to tax-motivated transactions.

On March 23, 1994, the parties in these cases each filed a Stipulation of Settled Issues. In each Stipulation of Settled Issues, the parties agreed that petitioners were not entitled to any deductions, investment tax credits, business energy investment credits, or any other tax benefits claimed on their tax returns as a result of their participation in the plastics recycling program.

The issues for decision are: (1) Whether petitioners are liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1) and (2); (2) whether petitioners are liable for the addition to tax under section 6659 for an underpayment of tax attributable to valuation overstatement; and (3) whether petitioners are liable for increased interest under section 6621(c).

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated by this reference. Petitioners Anthony J. and Claire L. Pace (petitioners Pace) resided in Lloyd Harbor, New Jersey, when their petition was filed. Petitioners Edgar P. and Dorothy M. Berry (petitioners Berry) resided in New York, New York, when their petition was filed.

During 1981, Anthony J. Pace (petitioner Pace) was an institutional salesman at Bear Stearns & Co., one of the largest securities brokerage and investment banking organizations in the

country.  His spouse, petitioner Claire L. Pace, was not employed outside the home during 1981.  Petitioner Edgar P. Berry was a surgeon during 1981.  His spouse, petitioner Dorothy M. Berry (petitioner Berry), was employed at Edgar Berry's professional corporation (Edgar P. Berry, MD PC) and also served as president of the auxiliary chapter of the American Medical Association during 1981.

On their 1981 Federal income tax return, petitioners Pace reported gross income from wages, interest, dividends, and farming in the amount of $306,597, less $3,000 in capital losses, and $53,792 in losses from partnerships, trusts, etc., including losses here in issue.  Petitioners Berry reported on their 1981 Federal income tax return gross income from wages, interest, dividends, and other sources in the amount of $206,038, less $34,637 in losses from rents, partnerships, trusts, etc., including losses here in issue.  Consequently, in the absence of significant deductions or credits, petitioners in each case were subject to payment of Federal income taxes in substantial amounts for taxable year 1981.

During the summer of 1981, petitioners Pace and Berry each acquired a 3.094-percent limited partnership interest in Hyannis Recycling Associates (Hyannis) for an investment of $25,000 each. As a result of the passthrough from Hyannis, on their respective 1981 Federal income tax returns petitioners each deducted an operating loss in the amount of $20,327 and claimed investment

tax and business energy credits totaling $39,604. The underlying deficiencies in these cases result from respondent's disallowance of petitioners' claimed operating losses and credits related to Hyannis for taxable year 1981.

The underlying transaction in these cases was found by this Court to be the initial Plastics Recycling transaction in Provizer v. Commissioner, T.C. Memo. 1992-177, and may be summarized as follows. In 1981, Packaging Industries, Inc. (PI), manufactured and sold six Sentinel expanded polyethylene (EPE) recyclers to ECI Corp. for $5,400,000 ($900,000 each), of which $340,000 was paid in cash. ECI Corp., in turn, resold the recyclers to the Hyannis limited partnership for $6,400,000 ($1,066,666 each), of which $440,000 was paid in cash. Hyannis then leased the recyclers to FMEC Corp., which subleased them back to PI. All of the monthly payments for nonrecourse notes, leases, and licenses, which were required among the entities in the above transactions, offset each other. These transactions were accomplished simultaneously.

After the Hyannis offering closed, the safe-harbor leasing rules were enacted as part of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 172. The underlying transaction was restructured in a manner designed to take advantage of the safe-harbor provisions. F & G Corp. became the safe-harbor lessor and was interposed between ECI Corp. and the primary leasing partnership, in this case Hyannis. Subsequent

Plastics Recycling programs were structured in a similar manner to take advantage of the new statutory safe-harbor opportunities. See Provizer v. Commissioner, T.C. Memo. 1992-177. We refer to the transactions herein collectively as the Hyannis transaction.

In the Provizer case, we considered such a restructured Plastics Recycling transaction, the Clearwater transaction. In the Clearwater transaction, PI sold six EPE recyclers to ECI Corp. for $981,000 each. ECI Corp., in turn, resold the recyclers to F & G Corp. for $1,162,666 each. F & G Corp. then leased the recyclers to Clearwater, which licensed them to FMEC Corp., which sublicensed them to PI. The transaction involved herein differed from the Clearwater transaction in the following respects: (1) F & G Corp. purchased the recyclers for $6,400,000, rather than the $6,975,996 paid in Clearwater, and (2) Hyannis, rather than Clearwater, leased the recyclers from F & G Corp. and then licensed them to FMEC Corp.[3] In all other material respects the transactions are substantively identical. Hyannis is thus like Clearwater, occupying the same link in the transactional chain. In addition, the Sentinel EPE recyclers considered in these cases are the same type of machine considered

---

[3] There is no explanation in the record as to why the six recyclers were sold to F & G Corp. for $6,400,000 in the Hyannis transaction but later the same number of identical machines sold for $6,975,996 in subsequent Plastics Recycling transactions. We note that the Hyannis partnership initially closed at the lower price prior to the enactment of the safe-harbor legislation and subsequently was modified in an attempt to take advantage of those rules by inserting F & G Corp. in the transaction.

in <u>Provizer</u>.  The fair market value of a Sentinel EPE recycler in 1981 was not in excess of $50,000.

PI allegedly sublicensed the recyclers to entities that would use them to recycle plastic scrap.  The sublicense agreements provided that the end-users would transfer to PI 100 percent of the recycled scrap in exchange for a payment from FMEC Corp. based on the quality and amount of recycled scrap.

Petitioners Pace and Berry each learned of the Hyannis transaction from Lawrence Greenstein (Greenstein).  Greenstein is a certified public accountant (C.P.A.).  Greenstein had been certified just 2 years earlier, in 1979, the same year he joined and became a partner at his father's firm, Greenstein & Co., PC. Greenstein's client services included accounting, tax preparation, and investment analysis.  The latter entailed checking figures and determining whether an investment was suited to a client's economic outlook and station in life.  When reviewing an investment involving high technology or other field outside his expertise, Greenstein relied upon the representations and due diligence of the dealer or promoter of the investment.

Greenstein learned about Hyannis from a client.  The client had heard about Hyannis from a member of the New York Stock Exchange, Cowen & Co., Inc. (CCI).  Greenstein spoke about Hyannis with representatives of CCI, in particular Peter Zuck (Zuck).  It was Greenstein's understanding that Zuck was in charge of marketing the Hyannis investment at CCI.  After

reviewing the Hyannis offering memorandum, Greenstein's primary concern was whether the machines worked. He expressed this concern to Zuck and was told that a group of investors would be touring the Hyannis plant and viewing the recyclers. Greenstein then introduced the Hyannis investment to petitioners Pace and Berry. Petitioners Pace and Berry were each given a copy of the Hyannis offering memorandum. Petitioner Pace wanted verification of the existence of the Sentinel EPE recycler, so Greenstein decided to visit the manufacturing plant in Hyannis.

On July 19th, 1981, Greenstein visited the Hyannis plant with Zuck, a handful of other potential investors, and the general partner of Hyannis, Richard Roberts. Greenstein and the other visitors were required to sign nondisclosure agreements before being allowed entry into the plant. Greenstein and the others viewed five to six Sentinel EPE recyclers in operation at the plant. The group also had lunch during the visit. Upon his return from the plant, Greenstein told petitioners Pace and Berry about the visit and recommended the investment. Greenstein was never offered, nor did he receive, compensation from CCI.

Greenstein does not have any formal training or work experience related to plastics recycling or plastics materials; he is not an engineer. Greenstein is an environmental enthusiast, but he is not knowledgeable with respect to recycling or other environmental technology.

Petitioners Berry usually sought professional advice before making investments. Their advisers in 1981 were Greenstein and his father, Charles Greenstein. The Greensteins provided accounting services to petitioners Berry, prepared their tax returns, and gave them investment advice from time to time. Petitioners Berry learned of the Hyannis investment from Greenstein and were provided a copy of the Hyannis offering memorandum. Petitioners Berry owned property near Hyannis and while there during the summer they visited a PI office. They also looked at the manufacturing plant, but they did not go inside or view a recycler. Petitioners Berry decided to invest in Hyannis after Greenstein gave them a favorable report of his visit to the plant. Petitioner Dorothy Berry provided the money for this investment.

Petitioners Berry have no education or work experience in plastics recycling or plastics materials. Petitioners Berry were aware of Greenstein's background and knew that he was not an expert in plastics recycling or plastics materials. Petitioners Berry never saw a Sentinel EPE recycler or visited any end-user locations.

Petitioners Pace also employed Greenstein and his father for accounting services. Greenstein introduced the Hyannis investment to petitioners Pace and provided them with a copy of the offering memorandum. Petitioner Pace wanted verification that the plant and machines existed before he would invest.

Greenstein visited the plant and reported to petitioners Pace that Hyannis was a legitimate business. Greenstein recommended the investment for its front-end tax benefits and potential residual values. At that time, petitioners Pace decided to go ahead with the investment.

Petitioners Pace have no education or work experience in plastics recycling or plastics materials. Petitioners Pace were aware of Greenstein's background and knew that he was not an expert in plastics recycling or plastics materials. There is nothing in the record indicating that petitioners Pace ever saw a Sentinel EPE recycler or visited any end-user locations.

OPINION

In Provizer v. Commissioner, T.C. Memo. 1992-177, a test case involving the Clearwater transaction and another tier partnership, this Court (1) found that each Sentinel EPE recycler had a fair market value not in excess of $50,000, (2) held that the Clearwater transaction was a sham because it lacked economic substance and a business purpose, (3) upheld the section 6659 addition to tax for valuation overstatement since the underpayment of taxes was directly related to the overstatement of the value of the Sentinel EPE recyclers, and (4) held that losses and credits claimed with respect to Clearwater were attributable to tax-motivated transactions within the meaning of section 6621(c). In reaching the conclusion that the Clearwater transaction lacked economic substance and a business purpose,

this Court relied heavily upon the overvaluation of the Sentinel EPE recyclers.

The underlying transaction in these cases (the Hyannis transaction) is in all material respects identical to the transaction considered in the Provizer case. The Sentinel EPE recyclers considered in these cases are the same type of machines considered in the Provizer case.

Based on the entire records in these cases, including the extensive stipulations, testimony of respondent's experts, and petitioners' testimony, we hold that the Hyannis transaction was a sham and lacked economic substance. In reaching this conclusion, we rely heavily upon the overvaluation of the Sentinel EPE recyclers. Respondent is sustained on the question of the underlying deficiencies. We note that petitioners have explicitly conceded this issue in their respective Stipulations of Settled Issues filed shortly before trial. The record plainly supports respondent's determinations regardless of such concessions. For a detailed discussion of the facts and the applicable law in a substantially identical case, see Provizer v. Commissioner, supra.

Issue 1. Sec. 6653(a) Negligence

In a notice of deficiency, respondent determined that petitioners Berry were liable for the negligence additions to tax under section 6653(a)(1) and (2) for 1981. Petitioners have the

burden of proving that respondent's determination is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).

In an amendment to answer, respondent asserted that petitioners Pace were liable for the negligence additions to tax under section 6653(a)(1) and (2). Because these additions to tax were raised for the first time in respondent's amendment to answer, respondent bears the burden of proof on this issue. Rule 142(a); Vecchio v. Commissioner, 103 T.C. 170, 196 (1994).

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. In cases involving negligence, an additional amount is added to the tax under section 6653(a)(2); such amount is equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence. Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would employ under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The question is whether a particular taxpayer's actions in connection with the transactions were reasonable in light of his experience and the nature of the investment or business. See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973).

When petitioners claimed the disallowed deductions and tax credits, they had no knowledge of the plastics or recycling industries. Petitioners contend that they reasonably relied on

the advice and due diligence of their accountant Greenstein, and to some extent upon the representations in the Hyannis offering memorandum.

Under some circumstances a taxpayer may avoid liability for the additions to tax under section 6653(a)(1) and (2) if reasonable reliance on a competent professional adviser is shown. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered. Id. In order for reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the reliance must be reasonable, in good faith, and based upon full disclosure. Id.; see Weis v. Commissioner, 94 T.C. 473, 487 (1990); Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974).

Reliance on representations by insiders, promoters, or offering materials has been held an inadequate defense to negligence. LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Marine v. Commissioner, 92 T.C. 958, 992-993 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991); McCrary v.

<u>Commissioner</u>, 92 T.C. 827, 850 (1989); <u>Rybak v. Commissioner</u>, 91 T.C. 524, 565 (1988). We have rejected pleas of reliance when neither the taxpayer nor the advisers purportedly relied upon by the taxpayer knew anything about the nontax business aspects of the contemplated venture. <u>Beck v. Commissioner</u>, 85 T.C. 557 (1985); <u>Flowers v. Commissioner</u>, 80 T.C. 914 (1983); <u>Steerman v. Commissioner</u>, T.C. Memo. 1993-447.

These cases do not present a situation such as that found in <u>Heasley v. Commissioner</u>, 902 F.2d 380, 385 (5th Cir. 1990), revg. T.C. Memo. 1988-408, where the Fifth Circuit Court of Appeals held that taxpayers, who were unsophisticated investors not educated beyond high school, were not liable for the negligence additions to tax. The facts in the present cases are distinguishable. Petitioners herein are all well-educated. The late Edgar Berry was a surgeon in 1981 and his wife, petitioner Dorothy Berry, graduated from Radcliffe College. Petitioner Pace graduated from St. Bonaventure in 1958. He has been working in the brokerage business since the late 1960's and during 1981 he was a highly compensated institutional salesman at Bear Stearns & Co. Petitioners Pace reported income or losses from nine different partnerships on their 1981 Federal income tax return, while petitioners Berry reported income or losses from four different partnerships, estates or trusts, or small business corporations. Accordingly, the record indicates that unlike the taxpayers in <u>Heasley</u>, petitioners in these cases were not

uneducated, unsophisticated investors in 1981. Not only were petitioners well-educated and financially successful in their professions and businesses, but also they were accustomed to considering tax-oriented investments, since they had made such investments in the past.

In evaluating the Hyannis transaction, petitioners purport to have relied on Greenstein and to some extent the offering memorandum. With respect to petitioners Berry, they did little beyond discussing the Hyannis transaction with Greenstein. While on vacation near Hyannis during the summer of 1981, they visited the plant site but did not enter it. When asked at trial whether she had read the offering memorandum, petitioner Berry testified, "I leafed through it," and "I don't know whether you would call it reading it." Petitioner Berry testified that she did not have any idea of the value of the recyclers. When asked if their value was important to her, she replied, "I guess I didn't think much about that." Petitioner Berry testified that she and her husband basically relied on Greenstein.

As for petitioners Pace, Anthony Pace was familiar with offering memoranda from his work at Bear Stearns & Co. He stated that he "relied on the offering memorandum" in evaluating Hyannis, yet when asked at trial how much time he spent reviewing it, he too replied, "I leafed through it." Petitioner Pace testified that his first impression of Hyannis was "it sounds awfully good, sounds too good in a sense." Nonetheless, all that

concerned petitioner Pace was whether the plant and recyclers actually existed. He had recently read about some executives of "Wall Street companies" who had invested in an oil and gas venture which turned out to be nothing more than wooden pipes painted different colors, and he did not want to blunder into an investment in a nonexistent physical plant. Greenstein's facilities tour verified the existence of the plant and recyclers. With the existence of PI and the recyclers confirmed, petitioner Pace thought he had no reason to believe Hyannis was not a "bona fide deal" and went forth with the investment.

Petitioners' alleged reliance on Greenstein does not satisfy the requirement that it be reasonable, in good faith, and based upon full disclosure. The purported values of the Sentinel EPE recyclers generated the deductions and credits in these cases. Yet the purported value of the Sentinel EPE recyclers is the very thing that petitioners and Greenstein did not verify. A taxpayer may rely upon his adviser's expertise (in these cases accounting and tax advice), but it is not reasonable or prudent to rely upon an adviser regarding matters outside of his field of expertise or with respect to facts which he does not verify. See Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affg. without published opinion Patin v. Commissioner, 88 T.C. 1086 (1987); Lax v. Commissioner, T.C. Memo. 1994-329.

Greenstein had just 2 years' experience as a C.P.A. He was not an engineer and had no education or work experience in

plastics materials or plastics recycling. Greenstein relied upon CCI and the offering materials for the value of the Sentinel EPE recyclers. Greenstein testified that he assumed that CCI had "done all of the due diligence that was necessary", and that the representations in the offering materials were therefore reliable. Nevertheless, petitioners claim that they relied on Greenstein regarding the value of the recyclers and the economic viability of the Plastics Recycling transactions. In these cases, recyclers purportedly worth $1,066,666 each were being sold, resold, leased, and subleased. Petitioners were not reasonable in relying upon Greenstein in claiming the deductions and credits related to their investments in Hyannis. In 1981 he was a relatively inexperienced C.P.A. who had no knowledge of the industry in which petitioners were considering investing. On behalf of his clients, Greenstein accepted the selling broker's offer of a plane trip to Hyannis, took the guided tour of the PI plant to ascertain that there really were recycling machines, and returned to tell his clients that if everything were exactly as represented in the seller's offering circular, there were good tax benefits up front so the deal was attractive. He did not obtain full disclosure of the Hyannis transaction, or raise any question concerning any aspect of the offering circular.

Moreover, on its face, the Hyannis transaction should have raised serious questions in the minds of ordinarily prudent investors. According to the offering memorandum, the projected

benefits for each $50,000 invested were investment tax credits in 1981 of $79,200 plus deductions in 1981 of $42,491. On their 1981 tax returns, petitioners each indicated ownership of investment credit property valued at $198,016 as a result of their participation in the Hyannis deal. In the first year of the investment alone, petitioners each claimed an operating loss in the amount of $20,327 and investment tax and business energy credits related to Hyannis totaling $39,604, while petitioners' each invested only $25,000 in Hyannis. The direct reductions in petitioners' respective Federal income tax, from just the tax credits, equaled 158 percent of their cash investment. Therefore, like the taxpayers in Provizer v. Commissioner, T.C. Memo. 1992-177, "except for a few weeks at the beginning, petitioners never had any money in the [Hyannis] deal." A reasonably prudent person would not conclude without substantial investigation that the Government was providing massive tax benefits to taxpayers in these circumstances. McCrary v. Commissioner, 92 T.C. 827, 850 (1989).

We think petitioners Pace and Berry failed to exercise due care in claiming large deductions and tax credits with respect to Hyannis on their respective 1981 Federal income tax returns. They did not reasonably rely upon Greenstein and the offering memorandum, or in good faith investigate the underlying viability, financial structure, and economics of the Hyannis transaction. We hold, upon consideration of the entire records,

that petitioners are liable for the negligence additions to tax under the provisions of section 6653(a)(1) and (2) for 1981. Respondent is sustained on this issue.

Issue 2.  Sec. 6659 Valuation Overstatement

In a notice of deficiency, respondent determined that petitioners Berry are liable for the section 6659 addition to tax for valuation overstatement on the portion of their 1981 underpayment attributable to the investment tax and business energy credits claimed with respect to Hyannis.  Petitioners Berry have the burden of proving that respondent's determination is erroneous.  Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).  In the case of petitioners Pace, respondent asserted an addition to tax under section 6659 in an amendment to answer.  Because it was raised for the first time in her amendment to answer, respondent bears the burden of proof on this issue.  Rule 142(a); Vecchio v. Commissioner, 103 T.C. 170, 196 (1994).

A graduated addition to tax is imposed when an individual has an underpayment of tax that equals or exceeds $1,000 and "is attributable to" a valuation overstatement.  Sec. 6659(a), (d). A valuation overstatement exists if the fair market value (or adjusted basis) of property claimed on a return equals or exceeds 150 percent of the amount determined to be the correct amount. Sec. 6659(c).  If the claimed valuation exceeds 250 percent of

the correct value, the addition is equal to 30 percent of the underpayment.  Sec. 6659(b).

Petitioners each claimed an investment tax credit and a business energy credit based on purported values of $1,066,666 for each Sentinel EPE recycler.  Petitioners stipulated that the fair market value of each recycler was not in excess of $50,000.  Therefore, if disallowance of petitioners' claimed credits is attributable to the valuation overstatement, petitioners are liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the credits claimed with respect to Hyannis.

Section 6659 does not apply to underpayments of tax that are not "attributable to" valuation overstatements.  See McCrary v. Commissioner, supra; Todd v. Commissioner, 89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988).  To the extent taxpayers claim tax benefits that are disallowed on grounds separate and independent from alleged valuation overstatements, the resulting underpayments of tax are not regarded as attributable to valuation overstatements.  Krause v. Commissioner, 99 T.C. 132, 178 (1992) (citing Todd v. Commissioner, supra), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994).  However, when valuation is an integral factor in disallowing deductions and credits, section 6659 is applicable.  See Illes v. Commissioner, 982 F.2d 163, 167 (6th Cir. 1992), affg. T.C. Memo. 1991-449; Gilman v. Commissioner, 933 F.2d 143, 151 (2d Cir.

1991), affg. T.C. Memo. 1989-684; <u>Masters v. Commissioner</u>, T.C. Memo. 1994-197; <u>Harness v. Commissioner</u>, T.C. Memo. 1991-321.

In their respective Stipulation of Settled Issues, petitioners each conceded that they "are not entitled to any deductions, investment credits, business energy investment credits, or any other tax benefits claimed on their tax returns as a result of their participation in the Plastics Recycling Program."  In <u>Todd v. Commissioner</u>, <u>supra</u>, and <u>McCrary v. Commissioner</u>, <u>supra</u>, we denied application of section 6659, even though the subject property was overvalued, because the related deductions and credits had been conceded or denied in their entirety on other grounds.  In <u>Todd</u>, we found that an underpayment was not attributable to a valuation overstatement because property was not placed in service during the years in issue.  In <u>McCrary</u>, we found the taxpayers were not liable for the section 6659 addition to tax when, prior to the trial of the case, the taxpayers conceded that they were not entitled to the investment tax credit because the agreement in question was a license and not a lease.  In both cases, the underpayment was attributable to something other than a valuation overstatement.

A concession of the investment tax credit in and of itself does not relieve taxpayers of liability for the section 6659 addition to tax.  See <u>Dybsand v. Commissioner</u>, T.C. Memo. 1994-56; <u>Chiechi v. Commissioner</u>, T.C. Memo. 1993-630.  Instead, what is significant is the ground upon which the investment tax credit

is disallowed or conceded.  See <u>Irom v. Commissioner</u>, 866 F.2d 545, 547 (2d Cir. 1989), vacating in part and remanding T.C. Memo. 1988-211; <u>Harness v. Commissioner</u>, <u>supra</u>.

In petitioners' cases, no arguments were made and no evidence was presented to the Court to prove that disallowance and concession of the investment tax credits related to anything other than valuation overstatements.  To the contrary, petitioners stipulated substantially the same facts concerning the underlying transactions as we found in <u>Provizer v. Commissioner</u>, <u>supra</u>.  In the <u>Provizer</u> case, we held that the taxpayers were liable for the section 6659 addition to tax because the underpayment of taxes was directly related to the overvaluation of the Sentinel EPE recyclers.  The overvaluation of the recyclers, exceeding 2325 percent, was an integral part of our findings in <u>Provizer</u> that the transaction was a sham and lacked economic substance.  Similarly, the records in these cases plainly show that the overvaluation of the recyclers is integral to and is the core of our holding that the underlying transaction in these cases was a sham and lacked economic substance.  When a transaction lacks economic substance, section 6659 will apply because the correct basis is zero and any basis claimed in excess of that is a valuation overstatement.  <u>Gilman v. Commissioner</u>, <u>supra</u>; <u>Rybak v. Commissioner</u>, 91 T.C. 524, 566-567 (1988); <u>Zirker v. Commissioner</u>, 87 T.C. 970, 978-979 (1986); <u>Donahue v. Commissioner</u>, T.C. Memo. 1991-181, affd. without published

opinion 959 F.2d 234 (6th Cir. 1992), affd. sub nom. Pasternak v. Commissioner, 990 F.2d 893 (6th Cir. 1993).

We held in Provizer v. Commissioner, T.C. Memo. 1992-177, that each Sentinel EPE recycler had a fair market value not in excess of $50,000. Our finding in the Provizer case that the Sentinel EPE recyclers had been overvalued was integral to and inseparable from our finding of a lack of economic substance. Petitioners stipulated substantially the same facts regarding the Hyannis transaction as we found with respect to the Clearwater transaction described in the Provizer case, and that the recyclers each had a fair market value not in excess of $50,000. Given those stipulations, and the fact that the records here plainly show that the overvaluation of the recyclers was the primary reason for the respective disallowances of the claimed tax benefits, and the fact that no argument was made and no evidence was presented to the Court to prove that the disallowances and concessions of the investment tax credits related to anything other than a valuation overstatement, we conclude that the respective deficiencies caused by the disallowances of the claimed tax benefits were attributable to overvaluation of the Sentinel EPE recyclers.

Finally, we consider the express arguments of petitioners as to waiver of the section 6659 additions to tax. On brief, petitioners each contested imposition of the section 6659 addition to tax on the grounds that respondent erroneously failed

to waive the addition.  Section 6659(e) authorizes respondent to waive all or part of the addition to tax for valuation overstatements if taxpayers establish that there was a reasonable basis for the adjusted bases or valuations claimed on the returns and that such claims were made in good faith.  Respondent's refusal to waive a section 6659 addition to tax is reviewable by this Court for abuse of discretion.  Krause v. Commissioner, supra at 179.

Petitioners urged that they relied on Greenstein, and to some extent upon the representations and evaluations contained in the offering memorandum, in deciding on the valuation claimed on their tax returns.  Petitioners contend that such reliance was reasonable, and, therefore, respondent should have waived the section 6659 addition to tax.

We have found that petitioners' purported reliance on Greenstein and the offering memorandum was not reasonable.  At the time of the investment, petitioners knew that Greenstein was not an engineer and had no education or experience in plastics materials or plastics recycling.  He made a very limited investigation about the recyclers, and there is no evidence or indication that petitioners were willing to finance a more thorough inquiry.  Nevertheless, petitioners relied exclusively on Greenstein for the underlying viability, financial structure, and economics of the Hyannis transaction.  The investment credits were directly dependent upon the value of the recyclers, and the

offering memorandum warned that the Internal Revenue Service would likely challenge their purported value. Yet the record indicates that petitioners' sought no verification of the value of the recyclers; their only concern was whether the recyclers actually existed.

Petitioners did not have a reasonable basis for the adjusted bases or valuations claimed on their 1981 returns with respect to their investments in Hyannis. Accordingly, in these cases respondent could find that petitioners' purported reliance on Greenstein and the promotional materials was unreasonable. The records here do not establish an abuse of discretion on the part of respondent but support respondent's position. We hold that respondent's refusal to waive the section 6659 additions to tax is not an abuse of discretion. Petitioners are liable for the respective section 6659 additions to tax at the rate of 30 percent of the underpayment of tax attributable to the disallowed credits for 1981. Respondent is sustained on this issue.

Issue 3. Sec. 6621(c) Tax-Motivated Transactions

With respect to petitioners Pace, respondent determined that interest on deficiencies accruing after December 31, 1984, would be calculated under section 6621(c). Petitioners Pace have the burden of proving that respondent's determination is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846 (1982). With respect to petitioners Berry, respondent asserted the section 6621(c) interest calculation in an amendment to answer. Because

it was raised for the first time in an amendment to answer, respondent bears the burden of proof.  Rule 142(a); <u>Vecchio v. Commissioner</u>, 103 T.C. 170 (1994).

The annual rate of interest under section 6621(c) equals 120 percent of the interest payable under section 6601 with respect to any substantial underpayment attributable to tax-motivated transactions.  An underpayment is substantial if it exceeds $1,000.  Sec. 6621(c)(2).

The term "tax motivated transaction" includes "any sham or fraudulent transaction."  Sec. 6621(c)(3)(A)(v).  Transactions devoid of economic substance are sham transactions for purposes of section 6621(c)(3)(A)(v).  <u>Friendship Dairies, Inc. v. Commissioner</u>, 90 T.C. 1054, 1068 (1988); <u>Cherin v. Commissioner</u>, 89 T.C. 986, 1000 (1987).  We have found that the Hyannis transaction was a sham transaction lacking economic substance.  Therefore, by definition the Hyannis transaction is tax-motivated under section 6621(c)(3)(A)(v).  Moreover, the term "tax motivated transaction" includes any section 6659(c) valuation overstatement.  Sec. 6621(c)(3)(A)(i).  In 1981, petitioners claimed a value for the recyclers in excess of 150 percent of the true value of the recyclers.  Therefore, petitioners had a valuation overstatement as defined in section 6659(c).

For section 6621(c) interest to apply, the underpayment of taxes must be "attributable to" a tax-motivated transaction.  Where a valuation overstatement or other category of tax-

motivated transaction is an integral part of, or inseparable from, the ground for disallowance of an item, section 6621(c) increased interest applies.  See McCrary v. Commissioner, 92 T.C. at 859.  Petitioners stipulated substantially the same facts regarding the underlying transaction in these cases as we found in Provizer v. Commissioner, T.C. Memo. 1992-177, where we held that the taxpayers were liable for the section 6659 addition to tax because the underpayment of taxes was directly related to the overvaluation of the Sentinel EPE recyclers.  In the present cases we have likewise found that overvaluation of the recyclers was an integral part of the ground for disallowance of the items related to Hyannis.  Accordingly, respondent's determination as to the applicable interest rate for deficiencies attributable to tax-motivated transactions is sustained, and the increased rate of interest applies for the taxable year in issue.

To reflect the foregoing,

Decision will be entered

under Rule 155.