T.C. Memo. 2000-151

UNITED STATES TAX COURT

JOHN S. HALPERN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13245-96.              Filed April 28, 2000.

<u>Richard A. Levine</u>, for petitioner.

<u>Michael A. Menillo</u> and <u>Tyrone J. Montague</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial Judge Carleton D. Powell pursuant to Rules 180, 181, and 183. All Rule references are to the Tax Court Rules of Practice and Procedure.  The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, <u>Special Trial Judge</u>:  By notice of deficiency respondent determined additions to tax under sections 6653(a)(1)

and 6659[1] in the respective amounts of $5,564 and $33,383 due from petitioner for the taxable year 1981.  Respondent also determined an addition to tax under section 6653(a)(2) in the amount of 50 percent of the interest due on a deficiency in the amount of $111,277 and that the increased interest provisions of section 6621(c) applied.

After a concession by respondent regarding the inapplicability of the additions to tax regarding petitioner's investment in Greenfield Arbitrage Partners, the sole issue before the Court at this time is whether petitioner is foreclosed from litigating the items contained in the notice of deficiency regarding Resource Reclamation Associates (RRA) by a closing agreement that he and respondent executed pursuant to section 7122.  Petitioner resided in New York, New York, at the time the petition was filed.

## Background

The relevant facts may be summarized as follows.  On his 1981 Federal income tax return petitioner claimed, inter alia, ordinary losses from his limited partnership interest in Resource Reclamation Associates (RRA) and Greenfield Arbitrage Partners (Greenfield) in the respective amounts of $41,074 and $74,972. Petitioner further reported $424,106 of property qualifying for

---

[1]  Section references are to the Internal Revenue Code in effect for the year in issue.

the investment tax credit and $424,106 of property qualifying for the business energy credit, partially resulting in a $43,722 claimed regular investment tax credit and resulting in a $42,411 claimed business energy investment credit with respect to RRA. Petitioner invested $50,000 in RRA.

By letter dated February 19, 1988, respondent proposed to disallow the deductions from RRA and Greenfield and the credits from RRA. Petitioner was represented by the law firm of Kirkland & Ellis with respect to the Greenfield issues. By letter dated March 30, 1988, Kirkland & Ellis asked that the RRA issues be deferred until the Greenfield issues are resolved. On September 6, 1990, respondent's Appeals Office executed a closing agreement with respect to the Greenfield issues. That agreement was signed by Steven Kamerman (Mr. Kamerman) on behalf of petitioner.

With regard to RRA, on August 2, 1990, Mr. Kamerman and petitioner executed a closing agreement. That agreement was signed by respondent's Appeals Office on September 6, 1990. The agreement provided, inter alia:

> (1) The taxpayer [petitioner] has claimed income, deductions, and/or credits on his tax returns for the taxable years 1981 and 1982 relating to the Resource Reclamation Assoc. tax shelter (hereafter the TAX SHELTER) which are in dispute between the taxpayer and the Commissioner of Internal Revenue (hereafter the IRS).

> (2) Items of income, deductions, and/or credits relating to the TAX SHELTER are in issue in a case pending before the United States Tax Court Harold M. Provizer and Joan Provizer v. Commissioner, Docket No. 27141-86 (hereafter the CONTROLLING CASE).

(3) The taxpayer and the IRS desire to settle the disputed TAX SHELTER issues on the same basis as finally determined in the CONTROLLING CASE.

NOW IT IS HEREBY DETERMINED AND AGREED for federal income tax purposes that;

(1) The above adjustment * * * shall be determined by application of the same formula as that which resolved the TAX SHELTER adjustment, whether litigated or settled, in the CONTROLLING CASE, as set forth in the final decision, as defined by section 7481 in the CONTROLLING CASE.

(2) All issues involving the above adjustment shall be resolved as if the taxpayer was the same as the petitioner in the CONTROLLING CASE.

(a) If the Court finds that any additions to tax or the section 6621(c) interest are applicable to the underpayment attributable to the above-designated TAX SHELTER adjustment, the resolution of the TAX SHELTER issue and the applicability of such additions to tax or interest to that TAX SHELTER issue as determined in the CONTROLLING CASE, whether by litigation or settlement, shall apply to the taxpayer as if the taxpayer was the same as the petitioner in the CONTROLLING CASE. [Fn. refs. omitted.]

The Provizer case referenced as the controlling case in the agreement was decided adversely to the taxpayers by this Court. The Court also sustained the additions to tax under sections 6653(a)(1), (2), and 6659 and determined that the increased interest provisions of section 6621(c) were applicable. See Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion 996 F.2d 1216 (6th Cir. 1993).

The facts concerning the transactions in Provizer may be summarized as follows. Packaging Industries Group, Inc. (PI), manufactured and sold six Sentinel Recyclers (the recyclers) to Ethynol Cogeneration, Inc. (ECI), for $981,000 each. ECI, in

turn, resold the recyclers to F&G Equipment Corp. (F&G Corp.) for $1,162,666 each. F&G Corp. leased the recyclers to the Clearwater Group partnership, which then licensed the recyclers to First Massachusetts Equipment Corp. (FMEC) which sublicensed them back to PI. PI allegedly sublicensed the recyclers to entities (the end-users), which would use them to recycle plastic scrap. The sublicense agreements provided that the end-users would transfer to PI 100 percent of the recycled scrap in exchange for payment from FMEC based on the quality and amount of recycled scrap. All of the foregoing transactions were executed simultaneously.

The sale of the recyclers from PI to ECI was financed with nonrecourse notes. Approximately 7 percent of the sales price of the recyclers sold by ECI to F&G Corp. was paid in cash, and the remainder was financed through notes. The notes provided that 10 percent of the amount thereof was recourse but that the recourse portion was due only after the nonrecourse portion had been paid in full. All of the monthly payments required among the entities in the above transactions offset each other. In Provizer v. Commissioner, supra, we found that the market value of a Sentinel Recycler in 1981 did not exceed $50,000 and that the nuts and bolts, or manufacturing, cost was $18,000.

The Provizers were limited partners in a partnership named Clearwater Group (Clearwater) and the general partner was Samuel

L. Winer (Mr. Winer).  Clearwater was one of many Plastics Recycling partnerships in which Mr. Winer was the general partner.  In this case, petitioner invested in RRA, and the general partner was Richard Roberts (Mr. Roberts).  Like Mr. Winer, Mr. Roberts was the general partner in many Plastics Recycling partnerships.[2]  In Greene v. Commissioner, T.C. Memo. 1997-296, the Court found that "The transactions involving the Sentinel EPE recyclers leased by * * * [RRA] are substantially identical to those in" Clearwater.  Moreover, we have carefully examined the private offering memorandum in RRA and do not find that there is any meaningful difference between the structural facts of the partnership set out in the offering memorandum and the facts that this Court found in Provizer.

On July 27, 1998, respondent filed a Motion for Entry of Decision.  The gravamen of that motion is that petitioner is bound by the closing agreement.  In opposition to respondent's motion, petitioner alleges that (1) he was not afforded an

---

[2]  See, e.g., Ulanoff v. Commissioner, T.C. Memo. 1999-170 (Plymouth Equipment Associates and Taylor Recycling Associates); Merino v. Commissioner, T.C. Memo. 1997-385 (Northeast Resource Recovery Associates), affd. 196 F.3d 147 (3d Cir. 1999); Sann v. Commissioner, T.C. Memo. 1997-259, affd. sub nom. Addington v. Commissioner, 205 F.3d 54 (2d Cir. 2000) (Empire Associates, Plymouth Equipment Associates, and Foam Recycling Associates); Zenkel v. Commissioner, T.C Memo. 1996-398 (Phoenix Recycling Group and Scarborough Leasing Associates (where Mr. Winer was also a general partner)); Stone v. Commissioner, T.C. Memo. 1996-230 (Northeast Resource Recovery Associates and Hyannis Recycling Associates); Pace v. Commissioner, T.C. Memo. 1995-580 (Hyannis Recycling Associates).

opportunity to settle his case as were other similarly situated taxpayers; (2) the notice of deficiency is invalid because respondent did not audit RRA; (3) the closing agreement "relates only to the items * * * relating to * * * [RRA], the 'TAX SHELTER' defined in the Closing Agreement" and Provizer v. Commissioner, supra, did not involve items relating to RRA; and (4) the closing agreement is invalid "because it was executed as a result of a misrepresentation of fact or fraud perpetrated by the Internal Revenue Service". Respondent's motion and petitioner's opposition thereto were set for hearing on November 4, 1998.

That hearing focused on whether there was a malfeasance or a misrepresentation of a material fact on the part of respondent at the time that the closing agreement was executed. Subsequent to the hearing, the Court issued an order denying respondent's motion for entry of decision on the ground that "there is a genuine issue of material fact as to whether respondent committed malfeasance or misrepresented a material fact in obtaining the closing agreement in issue." This case was then calendared for trial.

### Discussion

Section 7121(a) provides that the Secretary may enter into an agreement in writing "with any person relating to the liability of such person * * * in respect of any internal revenue

tax for any taxable period."  Section 7121(b) provides, inter alia:

> SEC. 7121(b) Finality.-- * * * such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact--

> *    *    *    *    *    *    *

> (2) in any suit, action, or proceeding, such agreement * * * shall not be annulled, modified, set aside, or disregarded.

An agreement under section 7121(a) is referred to as a closing agreement, and it is not disputed that petitioner executed such a closing agreement.  The issue is whether he is bound by that agreement.  Petitioner essentially makes two arguments.  First, he contends that the agreement should be set aside because of misrepresentation of material fact by respondent.[3]  Second, he contends that, as we understand, under the literal language of the agreement, he is not bound by the agreement.  We now turn to those issues.

### Misrepresentation of a Material Fact

Petitioner contends that when he executed the closing agreement his attorney, Mr. Kamerman, was told by Harris E. Fisher (Mr. Fisher), the Appeals Officer handling his case, that the Provizers were partners in RRA, when, in fact, they were partners in another partnership, Clearwater.  He further contends

---

[3]  Petitioner does not argue that respondent committed fraud.

that, if he had known that the partnership was one other than RRA, he would not have executed the closing agreement.

We are willing to assume, but do not decide, that Mr. Fisher may have represented that the Provizers were partners in RRA.[4] Nonetheless, even if Mr. Fisher represented that the Provizers were partners in RRA, we are not satisfied that that misrepresentation constituted a "misrepresentation of a material fact." Sec. 7121(b).

A "material fact" has been defined as "[a] fact that is significant or essential to the issue or matter at hand." Black's Law Dictionary, 611 (7th ed. 1999). For purposes of section 7121, a misrepresentation is not synonymous with a mistake: It "denotes something more deliberate or more conscious than mere error or mistake." Ingram v. Commissioner, 32 B.T.A. 1063, 1066 (1935). Under section 7121, misrepresentation of a material fact must go to the "essence of the agreement." Miller v. IRS, 174 Bankr. 791, 796 (B.A.P. 9th Cir. 1994), affd. 81 F.3d 169 (9th Cir. 1996). Since petitioner attacks the closing

---

[4] Mr. Kamerman testified that Mr. Fisher made this representation to him. Mr. Fisher testified that he did not remember making any such representation. Mr. Kamerman professed to have no knowledge of the Plastics Recycling tax shelter project. It may be questionable whether he even knew that there was more than one partnership involved. Furthermore, Mr. Roberts resigned as general partner of RRA in 1983, long before petitioner executed the closing agreement, and it is difficult to understand how the identity of the general partner would have affected Mr. Kamerman's decision to execute the closing agreement.

agreement, he has the burden of establishing a misrepresentation of a material fact with "clear and convincing proof". Hoge v. Commissioner, 33 B.T.A. 718, 725 (1935); see also Brinkman v. Commissioner, T.C. Memo. 1989-217.

If the partnerships were substantially identical, we do not understand how the alleged misrepresentation could be considered a "material fact". The question then is whether the RRA partnership in which petitioner invested was substantially different from Clearwater, the partnership involved in Provizer v. Commissioner, T.C. Memo. 1992-177.

It would seem that the first logical step would be, as the Court suggested to counsel, to examine the record in Provizer. That record is a public document and has been available in the Tax Court throughout these proceedings. For reasons that are not entirely clear, petitioner eschewed that approach. This is rather peculiar because in Greene v. Commissioner, T.C. Memo. 1997-296,[5] the Court found that "The transactions involving the * * * [recyclers] leased by * * * [RRA] are substantially identical to those in" Clearwater. It is true that that finding was based

_____

[5] There are two Greene cases--Greene v. Commissioner, 88 T.C. 376 (1987), and Greene v. Commissioner, T.C. Memo. 1997-296. In the first case Elliot I. Miller was counsel of record, and in the second case Lanny M. Sagal was counsel. Mr. Kamerman has suggested that Mr. Miller may have had a conflict of interest. Mr. Miller was not counsel in the second Greene case that is discussed above.

on a stipulated record.[6]  But, petitioner has not shown that any of the facts stipulated in Greene were different from the RRA facts.  As noted, we have examined the placement offering memorandum in RRA, and the transactions set forth in the offering appear virtually identical with the facts that the Court found in Provizer.  Moreover, at trial, Elliot I. Miller (Mr. Miller), who represented PI (the manufacturer of the recyclers) during the relevant period, testified that the same type of machines went to both RRA and Clearwater, and that the recyclers were delivered to RRA during 1981.  Mr. Miller testified that the partnerships were identical with two exceptions:

> The number of machines may not have been the same. * * * And the general partners were different. * * * But other than that, the transactions were the same.

As to the materiality of the alleged misrepresentation, Mr. Kamerman testified that he would not have recommended to petitioner that he be bound by litigation involving another partnership because there would be a "different general partner from" RRA.  Mr. Kamerman explained, that in his view "the general partner being different is a fundamental difference, and it's the

---

[6]  Counsel has raised questions as to the competency of the representation in the Greene cases; he did not know, and apparently had made no effort to find out, however, what records counsel in the Greene cases had.  While petitioner has complained that he cannot determine whether the partnerships were substantially identical, it appears that there may have been avenues that were available, but, for reasons that are not readily apparent, were not explored.

general partner's motive and intent in carrying out the business that determines whether or not the tax shelter had a profit motive."

In the context of this case, this is nonsense. In <u>Provizer</u> we found that the Plastics Recycling scheme was essentially an economic sham. At the heart of that conclusion was the fact that the recyclers were grossly overvalued. At no time did we indicate that the identity of the general partner and his profit motive had a material effect in resolving the Plastics Recyclying cases. The issue here is whether the alleged misrepresentation was material in the context of whether the closing agreement should stand, and Mr. Kamerman's professed preoccupation with the identity of the general partner really does not address that issue. Regardless who had been the general partner, the fact remains that the foundations of both partnerships rested on the same quicksand.

The Closing Agreement

Petitioner argues that, by the terms of the agreement, he is not bound to the result in <u>Provizer</u>. Petitioner's argument, as we understand, focuses on the language in the preamble of the agreement:

> (1) The taxpayer has claimed income, deductions, and/or credits * * * relating to the * * * [RRA] tax shelter (hereafter the TAX SHELTER) * * *.

> (2) Items of income, deductions, and/or credits relating to the TAX SHELTER are in issue in a case pending

before the United States Tax Court <u>Harold M. Provizer and Joan Provizer v. Commissioner</u>, Docket No. 27141-86 (hereafter the CONTROLLING CASE). [Fn. ref. omitted.]

According to petitioner, since the TAX SHELTER related to RRA and RRA's items of income, deductions, and/or credits were not in issue in <u>Provizer</u>, he should not be bound by the agreement. The problem with this interpretation is that it essentially ignores the operative parts of the agreement.

If there is a conflict between the premises stated and the operative part of a closing agreement, the parties are bound by the operative part. As we stated in <u>Zaentz v. Commissioner</u>, 90 T.C. 753, 761-762 (1988):

> section 7121 does not bind the parties as to the premises underlying their agreement, they are bound only as to the matters agreed upon. Sec. 7121(b). In fact, by excluding as grounds for rescission mistakes of fact or law, the statute contemplates that the parties may premise their agreement upon such a mistake. * * *

See also <u>Estate of Magarian v. Commissioner</u>, 97 T.C. 1, 5 (1991).

Furthermore, by executing the closing agreement petitioner and respondent obviously intended that the parties would be bound to something, i.e., as stated by the operative part of the agreement: "All issues involving the above adjustment [relating to RRA] shall be resolved as if the taxpayer [petitioner] was the same as the petitioner in the CONTROLLING CASE." The controlling case was <u>Provizer</u>. Petitioner's reading of the language in the preamble, therefore, makes little sense. On the other hand, if the reference to RRA refers generically to the cases involving

the plastic recyclers, the parts of the agreement are in harmony. This seems to us to be the more logical reading of the language in the preamble, and, notwithstanding Mr. Kamerman's testimony, it probably was what was intended by the parties.  Cf. Overhauser v. United States, 45 F.3d 1085, 1089 (7th Cir. 1995).

In sum, we do not find that there was a misrepresentation of a material fact, and, under section 7121(b)(2), we may not set aside or disregard the closing agreement.  Furthermore, we find that petitioner is bound by Provizer v. Commissioner, supra, under the closing agreement.[7]

Respondent also filed a motion for an award of a penalty under section 6673.  That section provides, in relevant part,

---

[7]  At trial, petitioner raised the argument that the closing agreement should be set aside because petitioner allegedly did not receive a prior offer that was more favorable to him than that which resulted from our Provizer v. Commissioner, T.C. Memo. 1992-177.  The theory apparently was that this amounted to malfeasance under sec. 7121(b), or at least it was on that theory that the Court allowed examination of the witnesses on that issue.  Petitioner has not argued this point on brief, and it is deemed conceded.  See Burbage v. Commissioner, 82 T.C. 546, 547 (1984), affd. 774 F.2d 644 (4th Cir. 1985); Wolf v. Commissioner, T.C. Memo. 1992-432, affd. 13 F.3d 189 (6th Cir. 1993).  Aside from the so-called TEFRA partnership provisions (see secs. 6621 through 6234 and on point sec. 6224(c)(2)) that do not apply here, there is nothing in the Internal Revenue Code that requires that an offer to one taxpayer be extended to other taxpayers. Moreover, it should be noted that there was a patent inconsistency in petitioner's argument that Mr. Fisher's alleged misrepresentation was to a material fact and petitioner's insistence that he was entitled to an alleged settlement based upon other Plastics Recycling cases.  The latter argument must assume that he was entitled to the offer because the cases were substantially identical.

that if it appears to the Court that a proceeding has been maintained primarily for delay or the taxpayer's position is frivolous or groundless, the Court may award a penalty to the United States in an amount not in excess of $25,000. See sec. 6673(a)(1). We admit that we are concerned about petitioner's motives in pursuing this litigation. Prior to the evidentiary hearing, the Court told Mr. Kamerman, petitioner's counsel at the time, that if the two partnerships were substantially the same, there was no misrepresentation of a material fact for purposes of section 7121(b). At the hearing, petitioner failed to introduce any probative evidence on this point. On the other hand, while petitioner's position on the misrepresentation of a material fact is highly suspect, we cannot say that his argument concerning the closing agreement was frivolous or made primarily for delay even though we may disagree with its conclusion. Accordingly, we shall deny respondent's motion for a penalty under section 6673(a).

An appropriate order will be issued, and decision will be entered under Rule 155.